IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

EDWARD J. RYAN, JR.,           :
                               :
        Plaintiff,             :
                               :
   v.                          :    C.A. No.
                               :
JAMES O. PLUMMER, III,         :
individually,                  :
RICHARD ZIEGENHORN and         :    Jury Trial Demanded
RICHARD H. SEENEY, each        :
individually and in their      :
official capacities as         :
members of the Town Council    :
of the Town of Cheswold, and   :
JoANNA CAMPBELL, in her        :
official capacity as a         :
member of the Town Council     :
of The Town of Cheswold, and   :
the TOWN OF CHESWOLD, a        :
municipal corporation,         :
                               :
        Defendants.            :

## COMPLAINT

1.   This is a civil action for compensatory and punitive

damages and for injunctive relief for retaliatory violations

of the free speech and petition clauses of the First Amendment

of the United States Constitution. Plaintiff was been

illegally discharged from his position as Town Manager of the

Town of Cheswold because he reported mismanagement of public

funds by the Town Treasurer, misappropriation of government

resources by the former Chief of Police, and improprieties by

two non-resident developers acting against the public
interest.  When they had the opportunity, individual
defendants Plummer, Ziegenhorn and Seeney illegally retaliated
against plaintiff for his protected speech because Plummer is
the Town Treasurer and he, Ziegenhorn and Seeney also are
allies, supporters or friends of the former Chief of Police
and/or the non-resident developers.

## I.  <u>JURISDICTION</u>

2.    The jurisdiction of this Court is invoked pursuant
      to
28 U.S.C. §§ 1331 and 1343(a)(3) and (4), 28 U.S.C. §§ 2201
and 2202, and the First and Fourteenth Amendments to the
United States Constitution.  The causes of action arise under
42 U.S.C. § 1983 and the First Amendment.  The claims arose in
this judicial district.

## II.  <u>THE PARTIES</u>

3.    Plaintiff is a citizen of the United States and a
resident of Kent County, Delaware.

4.    Defendant James O. Plummer, III, at all times
      relevant
hereto was a member of the Town Council of the Town of
Cheswold who voted to discharge plaintiff.  He is sued
individually since he is now a former Council member.

2

5.   Defendant Plummer was the Town Treasurer and is an ally, supporter or friend of the former Chief of Police and/or the non-resident developers.

6.   Defendant Richard Ziegenhorn, at all times relevant hereto was a member of the Town Council of the Town of Cheswold who voted to discharge plaintiff.  He is sued individually and in his official capacity.

7.   Defendant Ziegenhorn is an ally, supporter or friend

of the Town Treasurer, the former Chief of Police and/or the non-resident developers.

8.   Defendant Richard H. Seeney, at all times relevant hereto was a member of the Town Council of the Town of Cheswold who voted to discharge plaintiff.  He is sued individually and in his official capacity.

9.   Defendant Seeney is an ally, supporter or friend of the Town Treasurer, the former Chief of Police and/or the non-resident developers.

10.  Defendant JoAnna Campbell is a current member of the

Town Council of the Town of Cheswold.  She is sued only in her official capacity.

11.  The Town of Cheswold ("Town") is a municipal corporation organized under the laws of the State of Delaware. The Town is governed by a Mayor and a Town Council ("Council").  The Council consists of five members.  At the

4

time of plaintiff's discharge, the five council members were defendants Plummer, Ziegenhorn, and Seeney, and councilpersons Conchetta Edel and Robert Sine.  The current Council consists of defendants Ziegenhorn and Seeney, as well as Robert Sine, Peter Diakos and JoAnna Campbell.

### III.  <u>FACTS GIVING RISE TO THE ACTION</u>

**A.   <u>Plaintiff's Employment Contract</u>**

12.  On January 27, 2005, plaintiff was hired as the Town Manager of the Town of Cheswold under a five year written employment contract.

13.  The written contract was negotiated at arm's length and was fair to all parties.

14.  However, Plaintiff's employment only lasted from January 27, 2005, to October 13, 2005.

15.  From January 27, 2005, to October 13, 2005, the Town,
the Mayor and the members of the Town Council accepted plaintiff's services as Town Manager.  In so doing, defendants repeatedly ratified plaintiff's written contract.

16.  Earlier, plaintiff was serving as a member of the Town
Council when the need to employ him as Town Manager arose.

17.  In order for the hiring of plaintiff to comply with

municipal law, the Town Charter was amended.

18. The amendment successfully passed the Delaware House of

Representatives and then the Senate on January 27, 2005.

19. Governor Ruth Ann Minner signed House Bill 14 on February 10, 2005, approximately ten days after plaintiff's written contract was signed. In so doing, the Town Charter was amended to allow plaintiff to serve as Town Manager.

20. Plaintiff's written employment contract was valid and

legally enforceable on January 27, 2005.

21. In the alternative, Plaintiff's written employment contract was valid and legally enforceable as of February 10, 2005.

**B.  <u>Plaintiff's Outstanding Job Performance</u>**

22. At all times, plaintiff's job performance was outstanding. In approximately August of 2005, Plummer, Ziegenhorn, Seeney, Edel, Sine and Diakos reported on plaintiff's outstanding job performance and abilities in both the *Delaware State News* and the *Dover Post*.

23. Over time, plaintiff, through his efforts as Town Manager, increased the Town treasury balance from approximately $100,000 in January of 2005, to approximately

$600,000 by November of 2005.

24.  As Town Manager, plaintiff fought for and obtained a

real estate transfer tax payment of approximately $247,000

from the Louis Capano business interests for a secretive $16

million development project within the Town limits.

C.  **Plaintiff's Protected Speech and Petition**

   **(1) Town Treasurer's Mismanagement of Public Funds**

25.  Beginning as early as February of 2005, plaintiff

insisted upon an audit of all Town finances.

26.  The Town Charter recommends an annual audit of all

Town finances.  However up to that time, the Town had never

been audited, despite the Charter's recommendation.

27.  At that time, defendant Plummer had been the Town

Treasurer for many years.

28.  An outside investigation by U.S. government

         employees

administering the Community Oriented Police Services ("COPS")

federal grant program revealed mismanagement of government

funds by defendant Plummer and individuals closely associated

with him.

29.  Such mismanagement by Plummer included improperly

depositing checks not intended for the Town, signing checks

without the requisite authorization, failure to transfer funds from the Town's general account to its police payroll account which subsequently incurred unnecessary bank charges for insufficient funds, refusal to correct mistakes discovered on his monthly financial reports, and other accounting errors in managing public funds.

30. Such mismanagement also included payment of public funds by Plummer to a friend of his then girlfriend, and subsequent wife, "C.L.", for an inadequate and poorly designed Town website.

31. Then under the pretense that the money collected would be used to pay for advertising on this Town website, C.L. collected money from private businesses in the Town for her personal use.

32.  An audit by the Town would have revealed such mismanagement of government funds by defendant Plummer and those closely associated with him.

33.  In written memos to the Mayor, plaintiff criticized the mismanagement of government resources by defendant Plummer in his capacity as Town Treasurer.

34.  Defendants Plummer, Ziegenhorn and Seeney were aware of these memos, and they were antagonized by them.

35.  Plaintiff then received approval from the Town Council to contract with another business to produce a more sophisticated website for the Town.

36.  During the debate on whether to discharge plaintiff, defendant Plummer demanded that plaintiff be fired regardless of the costs to the Town of Cheswold or any other ramifications of such action.

37.  Plummer's demand substantially affected the votes of defendants Ziegenhorn and Seeney.  But for his demand they may have voted to retain the employment of plaintiff.

**(2) Police Chief Misappropriates Government Resources.**

38.  Shortly after he assumed his duties as Town Manager,

plaintiff noticed irregularities regarding the Town's police
department which included mismanagement of government
resources by then Chief of Police "R.V."

39.   Specifically, in approximately April of 2005, plaintiff
reported to Town Council that the Chief of Police made
purchases of cellular telephones with public funds for the
personal benefit of his spouse, a fellow officer, and R.V.
himself.

40.   Plaintiff presented these irregularities to the Town's
Mayor and Council.

41.   Defendants Plummer, Ziegenhorn and Seeney are all
allies, supporters or friends of former Chief of Police R.V..

42.   Plaintiff's reports antagonized defendants Plummer,
Ziegenhorn and Seeney.

43.   As a result of plaintiff's vigorous efforts and
protected speech, the Chief of Police was placed on
administrative leave and, eventually, he was discharged by the
Town Council on or about May 25, 2005.

**(3) Non-resident Developers Act Against Public Interest.**

44. Finally, plaintiff vigorously opposed the business
interests within the Town limits of two non-resident
developers, the Louis Capano and Julian families, who acted
against the public interest.

45.   Specifically in August or September of 2005,

plaintiff

vocally opposed the Julian family's attempt to develop, for

heavy industry, land adjacent to residential property within

the Town limits.

46.  In so doing, plaintiff emphasized that such development

would harm the Town's residents and violate its land use

ordinance.

47.  Also, in approximately August of 2005, plaintiff spoke out

about an attempt to evade the real estate transfer tax by the

Louis Capano family in purchasing land within the Town limits

for a secretive $16 million development project.

48.  In approximately September of 2005, plaintiff, in the

scope of his employment as Town Manager, obtained a real

estate transfer tax payment of approximately $247,000 from the

Louis Capano business interests.

49.  Defendant Ziegenhorn is a friend of the Capano family.

50.  Plaintiff's speech antagonized Ziegenhorn.

51.  During the debate in October of 2005, on whether to

discharge plaintiff, defendant Ziegenhorn noted that plaintiff

had opposed the Capano business and development interests.

52.  Specifically, at a closed Council meeting on October 13,

2005, Ziegenhorn admitted that the collection of the $247,000

13

real estate transfer tax from the Capano interests was a substantial or motivating factor in his decision to vote to discharge plaintiff.

53. Ziegenhorn's statements substantially affected the votes of defendants Plummer and Seeney. But for his statements they may have voted to retain the employment of plaintiff.

54. In sum, plaintiff spoke out to the Town Council and likewise petitioned them for a redress of grievances, in his capacity as a citizen, Town resident and as a public employee.

55. Through his oral and/or written statements regarding mismanagement of public funds by the Town Treasurer, misuse of government resources by the Chief of Police and acts against the public interest by the non-resident developers, plaintiff exercised his First Amendment right to speak out on matters of public concern and to petition government for a redress of grievances.

56. At all times, in his capacity as a citizen, Town resident and also as a Town employee, plaintiff spoke out and petitioned on
matters of public concern under the First Amendment, specifically  mismanagement of public funds, misuse of government resources, breach of the public trust, fraud and

14

governmental corruption by defendant Plummer, Chief of Police R.V., and the non-resident developers and the need to correct these abuses.

57.  As a citizen, Town resident and as a public employee, plaintiff sought to bring to light actual or potential

wrongdoing or breach of the public trust by defendant Plummer, Chief of Police R.V., and the non-resident developers and to have those wrongs exposed to the light of day and corrected by those with authority to do so.

58.  By its content, form and context, at all times plaintiff spoke out about matters of public concern.

59.  His petition for the redress of grievances was not a "sham" petition.

**D.  The Non-disruptive Nature of Plaintiff's Speech and Petition.**

60.  All of plaintiff's speech and petitioning was non-disruptive of any legitimate interest of the Town or his employer and was on matters of public concern to the Town, as well as the Town Council, the news media, voters and the public at large.  His speech and petitioning related to matters of political, social and other concern to the community.

15

61.  Plaintiff was acting in good faith and with honest motive
at all times when he exercised his First Amendment rights to
freedom of speech and to petition the government.  At all
times, plaintiff believed that his speech was true.

62.  Plaintiff was not being disloyal by speaking out and
petitioning the government.  Instead, he sought to bring to
light mismanagement, fraud, corruption, breaches of public
trust and other violations of the law.

63.  The public concern in and value to the community at large
of being free to hear plaintiff's speech outweighs any
asserted government interest in the effective and efficient
provision of services.

64.  Nothing plaintiff said interfered with the regular
operations of the Town, the Town Council, the Town Treasury,
or the Police Department.  Plaintiff's speech did not
interfere with the Police Department's interests in crime
fighting, fostering trust and confidence among officers, or
protecting the safety of officers or other members of the
community.

65.  Any disruption that was caused was not caused by
plaintiff's speech but was instead caused by the very problems

16

that plaintiff's speech was in fact intended to address -
illegal conduct.

66.   In his position as Town Manager, plaintiff did not
make or enact Town policy.  Rather, enactment of municipal
policy is left up to others.

67.   The individual defendants were aware of plaintiff's
protected speech and petition, described above, and it angered
and antagonized them.

      **E.**    **Plaintiff's Discharge**

68.   On October 13, 2005, at a Town Council special
      meeting,
defendant Plummer moved to dismiss plaintiff as Town Manager
immediately.  The motion was seconded by defendant Ziegenhorn.

69.   Defendants Plummer, Ziegenhorn and Seeney voted to
dismiss plaintiff as Town Manager.  Councilperson Robert Sine
voted against dismissal.  Councilperson Conchetta Edel
abstained from the vote.

70.   At that same meeting, immediately following the
decision to discharge plaintiff, Edel resigned from Town
Council.

71.   As a result of the three to one vote in favor of
      dismissal,
plaintiff was fired on October 13, 2005.

17

72.  In so doing, defendants ignored the legal opinion and
advice given in an Executive Session that same day by their then Town Solicitor Nicholas Rodriguez who told the members of the Town Council that 1) plaintiff's five year written employment contract was valid and enforceable, 2) there was no legal justification to fire plaintiff under that contract, 3) discharge of plaintiff would violate his legal rights, and 4) thus the Town Council should not discharge plaintiff.

73.  Rodriguez subsequently resigned as Town Solicitor as a result of Town Council's illegal discharge of plaintiff against his advice.

74.  As a result of plaintiff's protected speech and petition, defendants retaliated against him and discharged him.

75.  The retaliatory adverse action taken by defendants against plaintiff is sufficient to deter a person of ordinary firmness from exercising his First Amendment rights to speech and petition.

76.  A reasonable person of ordinary firmness would be deterred from exercising his First Amendment rights to speech and petition when threatened with discharge.

**F.   Inconsistent Stated Reasons for the Discharge**

77.  Initially, defendants indicated that the reason for discharging plaintiff was based on the alleged illegality of his contract.

78.  Then on December 27, 2005, defendants' counsel Ronald

G. Poliquin wrote that plaintiff's employment "was terminated based on the illegality of his contract *and* deficiency of his performance as Town Manager."

79.  Then on April 3, 2006, at an open Town Council Meeting,

defendant Ziegenhorn stated that the reason the Town Council fired plaintiff was because of a public outcry that they should do so.

**G.  <u>The Causal Link Between Speech, Petition and Adverse Action</u>**

80.  There is a causal link between First Amendment protected activity on matters of public concern, or petition for the redress of grievances, and the adverse action of discharging plaintiff. This is demonstrated by:

(a)  the temporal proximity of events, as indicated above,

(b)  circumstantial evidence of a pattern of antagonism following protected activity, for example, defendant

19

Plummer demanded that plaintiff be fired regardless of the costs to the Town of Cheswold or any other ramifications of such action,

(c)   the inconsistent reasons for the defendants' vote to discharge plaintiff which lead to the logical conclusion that those reasons are illicit and that the real reason is retaliation,

(d)   personal knowledge and awareness of protected activity by the individual defendants because they were members of the Town Council to whom plaintiff spoke on matters of public concern,

(e)   violation of policies, customs and procedures when defendants ignored the legal advice of the Town Solicitor in discharging plaintiff, and

(f)   the evidence as a whole.

81.   First Amendment protected activity was a substantial or motivating factor in the decision to discharge plaintiff. The natural probative force of the evidence demonstrates causation.

82.   The defendants cannot prove by a preponderance of the evidence that absent a constitutional violation they would have grounds to discharge plaintiff.

20

**H.    Plaintiff's Injuries**

83.    As a direct and proximate result of the retaliatory actions of defendants, plaintiff has been shunned by other municipal government-employers to whom he subsequently has applied, and he has been rejected for vacant town manager positions including, but not limited to, the towns of Lewes and Felton.  In rejecting his applications for employment, these public employers have questioned if there is something wrong with him as a town manager or if plaintiff engaged in improper conduct which would justify defendants' decision to discharge him.

84.    As a direct and proximate result of the retaliatory actions of defendants, local, statewide, and national newspapers, including *The News Journal*, the *Delaware State News*, the *Dover Post*, and even *USA Today* have reported defendants' discharge of plaintiff.

85.    Plaintiff also has been isolated from society as a result of defendants' retaliatory actions.  Plaintiff may never know the extent of his lost opportunities to relate and associate with others because he can be avoided without knowing the reason and without having a chance to explain the reason for the retaliatory action taken against him.

86.    As a result of the retaliation he experienced,

plaintiff has had to see a physician, and he even was hospitalized at Kent General Hospital.

87.  Plaintiff has been diagnosed by his physician with depression, anxiety and stress.

88.  As a direct and proximate result of the actions of the defendants as detailed herein, plaintiff has or will suffer lost or reduced wages and earnings, diminished earning capacity now and upon his retirement, lost or reduced pension and benefits, decreased employment and earnings opportunities and other pecuniary losses, emotional pain, suffering, anger, disappointment, inconvenience, mental anguish, loss of enjoyment of life, mental and physical pain, physical injury, anguish, humiliation, embarrassment, injury to reputation and other pecuniary and non-pecuniary losses and injuries.

89.  Plaintiff also has been required to pay for medical visits and medications which he otherwise would not have been required to pay, he is still undergoing continuing medical treatment requiring medication, and his injuries are permanent.

    IV.  **ALLEGATIONS REGARDING THE DEFENDANTS' CONDUCT**

90.  At all times material hereto the individual defendants

participated in, authorized, and sanctioned the federal
constitutional deprivation described above which illegally
retaliated against plaintiff.

91. At all times material hereto the individual
defendants
and their agents were acting under color of law. The federal
constitutional deprivation described herein is fairly
attributable to the municipal defendant.

92. The actions of the defendants and their agents or
employees were deliberately, intentionally, willfully,
purposefully, and knowingly done in violation of federal
constitutional rights and because of the exercise of those
rights.

93. The individual defendants either knew or showed a
negligent or reckless disregard for the matter of whether
their conduct violated federal constitutional rights.

94. Their actions were outrageous and taken with evil
motive, in bad faith, out of personal animus and without any
reasonable grounds to support them.

95. Their actions were wanton and malicious or taken
with reckless indifference to federal constitutional rights.

96. The exercise of rights under the U.S. Constitution
made a difference in all actions adverse to plaintiff.

97.   The exercise of these rights was a substantial, motivating or determinative factor in the action adverse to plaintiff.

98.   The individual defendants did not reasonably believe that the action they took was necessary to accomplish any legitimate governmental purpose.

99.   The individual defendants' actions violated clearly established federal constitutional rights of which any public official would have known.

100.   The individual defendants' actions were motivated by

bias, bad faith, and improper motive.

101.   The individual defendants' actions constitute an abuse

of governmental power.

102.   The individual defendants' actions do not further any

narrowly drawn important, substantial or compelling governmental interest.

103.   The individual defendants' actions are not so reasonable as to further any governmental interest asserted and do not closely fit the goal of serving those governmental interests.

104.  The individual actions of the defendants were taken pursuant to municipal policies, customs and/or practices and were authorized, sanctioned, implemented, permitted, and ratified by officials functioning at a policymaking level.

105.  By the policy, custom, and/or practice of officials functioning at a policy making level, the individual defendants have retaliated against plaintiff.  That policy, custom and/or practice caused a deprivation of constitutional rights.  Additionally, the individual defendants must have known, or reasonably should have realized, from the nature of their conduct that their policy, custom and/or practice was causing or was likely to cause violations of constitutional rights.

### COUNT I (FREE SPEECH CLAUSE)

106.  Plaintiff repeats and realleges paragraphs 1-105 set

out above.

107.  The defendants took action adverse to plaintiff as a

direct and proximate result of and in retaliation for plaintiff's First Amendment protected speech on matters of public concern.  There is a temporal and causal relationship between plaintiff's aforementioned protected speech and conduct, and adverse employment action.  First Amendment

25

protected activity was a substantial or motivating factor in the adverse employment action.  The defendants cannot prove by a preponderance of the evidence that absent a constitutional violation they would have had grounds to discharge plaintiff.

108.  Plaintiff's constitutional right to freedom of speech

has been denied under the First Amendment of the U.S. Constitution and 42 U.S.C. § 1983.

### COUNT II (PETITION CLAUSE)

109.  Plaintiff repeats and realleges paragraphs 1-108 set

out above.

110.  The defendants took action adverse to plaintiff as a

direct and proximate result of and in retaliation for plaintiff's First Amendment protected petitions for the redress of grievances.  There is a temporal and causal relationship between plaintiff's aforementioned protected petition and the adverse employment action.  First Amendment protected activity was a substantial or motivating factor in the adverse employment action.  The defendants cannot prove by a preponderance of the evidence that absent a constitutional violation they would have had grounds to discharge plaintiff.

111.  Plaintiff's constitutional right to petition government

for the redress of grievances has been denied under the First
Amendment of the U.S. Constitution and 42 U.S.C. § 1983.

    **WHEREFORE**, plaintiff prays that the Court:

    (A)  Enter judgment against the defendants, jointly
         and severally.

    (B)  Enter a declaratory judgment declaring the acts
         of the defendants to be a violation of
         plaintiff's constitutional rights.

    (C)  Enter a judgment against defendants Plummer,
         Ziegenhorn and Seeney and the Town, jointly and
         severally, for compensatory damages, including
         lost wages, back pay, pension and other
         benefits, for future or front pay, loss of
         earning capacity, emotional distress,
         humiliation, embarrassment, and injury to
         reputation.

    (D)  Enter separate judgments against defendants
         Ziegenhorn, Plummer and Seeney, jointly and
         severally, for punitive damages.

    (E)  Issue a mandatory injunction directing the
         defendants to reinstate plaintiff to the
         position of Town Manager of the Town of Cheswold
         under a five year written contract, the terms of
         which would be consistent with plaintiff's prior
         written contract.

(F)  Award front pay until plaintiff can be reinstated to that position.

(G)  Enjoin the defendants from retaliating against plaintiff.

(H)  Issue a reparative injunction directing that the individual defendants sign and publish in the *News Journal*, the *Delaware State News*, the *Dover Post* and *USA Today*, an advertisement indicating that plaintiff was qualified for the position of Town Manager, and apologizing for violating his constitutional rights.

(I)  Award plaintiff attorneys' fees, costs and pre and post judgment interest for this action.

(J)  Require such other and further relief as the Court deems just and proper under the circumstances.

**THE NEUBERGER FIRM, P.A.**

/s/ Thomas S. Neuberger
**THOMAS S. NEUBERGER, ESQUIRE (#243)**

**STEPHEN J. NEUBERGER, ESQUIRE (#4440)**
Two East Seventh Street, Suite 302
Wilmington, Delaware 19801
(302) 655-0582


**LAW OFFICE OF JOHN M. LaROSA**

/s/ John M. LaRosa
**JOHN M. LaROSA, ESQUIRE (#4275)**
Two East Seventh Street, Suite 302
Wilmington, Delaware 19801

(302) 888-1290

Attorneys for Plaintiff

Dated: May 11, 2006

John's Files/Client/Civil Actions/Ryan/Pleadings/Complaint draft 3 TSN

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**. (a) PLAINTIFFS**

Edward J. Ryan, Jr.

**DEFENDANTS**

James O. Plummer, III; Richard Ziegenhorn; Richard H. Seeney; JoAnna Campbell; and the Town of Cheswold

**(b)** County of Residence of First Listed Plaintiff ___Kent___
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed ___Kent___
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
See Attachment.

Attorneys (If Known)
Ronald G. Poliquin, Esquire
Young Malmberg & Howard, P.A.
30 The Green
Dover, DE 19901          (302) 672-5600

## I. BASIS OF JURISDICTION   (Place an "X" in One Box Only)

☐ 1  U.S. Government
        Plaintiff

X 3  Federal Question
        (U.S. Government Not a Party)

☐ 2  U.S. Government
        Defendant

☐ 4  Diversity
        (Indicate Citizenship of Parties
        in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                              and one Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## V. NATURE OF SUIT   (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | ☐ 423 Withdrawal | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury — | of Property 21 USC 881 | 28 USC 157 | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 820 Copyrights | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 830 Patent | ☐ 810 Selective Service |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | ☐ 840 Trademark | ☐ 850 Securities/Commodities/ |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | Exchange |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | | **LABOR** | ☐ 875 Customer Challenge |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | **LABOR** | **SOCIAL SECURITY** | 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| | | | | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt.Reporting | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | & Disclosure Act | | Information Act |
| ☐ 220 Foreclosure | X 442 Employment | Sentence | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | Habeas Corpus: | | ☐ 870 Taxes (U.S. Plaintiff | Determination Under |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | ☐ 790 Other Labor Litigation | or Defendant) | Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party | ☐ 950 Constitutionality of |
| ☐ 290 All Other Real Property | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | ☐ 791 Empl. Ret. Inc. | 26 USC 7609 | State Statutes |
| | | ☐ 550 Civil Rights | Security Act | | ☐ 890 Other Statutory Actions |
| | | ☐ 555 Prison Condition | | | |

## V. ORIGIN
(PLACE AN "X" IN ONE BOX ONLY)

Appeal to
District
Judge from
Magistrate
Judgment

X 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ 6 Multidistrict Litigation  ☐ 7

## VI. CAUSE OF ACTION
(Cite the U.S. Civil Statute under which you are filing and write brief statement of cause.
Do not cite jurisdictional statutes unless diversity.)

This is a civil action under 42 U.S.C. § 1983, for compensatory and punitive damages and for injunctive relief for retaliatory violations of the free speech and clauses of the 1st Amendment of the U.S. Constitution arising from the discharge of a Town Manager for public concern speech regarding financial mismanagement by Town Treasurer, misappropriation of government resources by the Chief of Police, and improprieties by two non-resident developers acting against the public

## VII. REQUESTED IN COMPLAINT:
CHECK IF THIS IS A **CLASS ACTION**
UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:      X Yes    ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):

JUDGE

DOCKET NUMBER

DATE

SIGNATURE OF ATTORNEY OF RECORD

OR OFFICE USE ONLY

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

JS 44 Reverse  (Rev. 3/99)

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS-44

Authority For Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.     **(a) Plaintiffs-Defendants.**  Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b.) County of Residence.  For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys.  Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II.     **Jurisdiction**.  The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff.  (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States, are included here.

United States defendant.  (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question.  (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship.  (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

III.     **Residence (citizenship) of Principal Parties.**  This section of the JS-44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV.     **Nature of Suit.**  Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section IV below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

V.     **Origin**.  Place an "X" in one of the seven boxes.

Original Proceedings.  (1) Cases which originate in the United States district courts.

Removed from State Court.  (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court.  (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened.  (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District.  (5) For cases transferred under Title 28 U.S.C. Section 1404(a) Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation.  (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment.  (7) Check this box for an appeal from a magistrate judge's decision.

VI.     **Cause of Action**.  Report the civil statute directly related to the cause of action and give a brief description of the cause.

VII.     **Requested in Complaint**.  Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand.  In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand.  Check the appropriate box to indicate whether or not a jury is being demanded.

VIII.     **Related Cases**.  This section of the JS-44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature**.  Date and sign the civil cover sheet.

## ATTACHMENT TO CIVIL COVER SHEET

**I.(c)    Attorney's (Firm Name, Address, and Telephone Number)**

The Neuberger Firm, P.A.
Thomas S. Neuberger, Esquire
Delaware Bar No. 243
Stephen J. Neuberger, Esquire
Delaware Bar No. 4440
Two East Seventh Street, Suite 302
Wilmington, Delaware 19801
(302) 655-0582

Law Office of John M. LaRosa
John M. LaRosa, Esquire
Delaware Bar No. 4275
Two East 7th Street, Suite 302
Wilmington, Delaware 19801-3707
(302) 888-1290

AO FORM 85 RECEIPT (REV. 9/04)

United States District Court for the District of Delaware

Civil Action No. _____ 0 6 - 3 1 2 _____

# ACKNOWLEDGMENT
# OF  RECEIPT  FOR AO FORM  85

## *NOTICE OF AVAILABILITY OF A*
## *UNITED STATES MAGISTRATE JUDGE*
## *TO EXERCISE JURISDICTION*

I HEREBY ACKNOWLEDGE RECEIPT OF _____ 5 _____ COPIES OF AO FORM 85.

_____
(Date forms issued)

_____
(Signature of Party or their Representative)

_____
(Printed name of Party or their Representative)

Note: Completed receipt will be filed in the Civil Action